## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHERLYN KINSEY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **vs.** | ) | **2:05-cv-01220-JHH** |
| | ) | |
| **ENTERPRISE LEASING** | ) | |
| **COMPANY and ENTERPRISE** | ) | |
| **LEASING SOUTH CENTRAL, INC.,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## MEMORANDUM OPINION

The court has before it the December 21, 2006 second motion (doc. #29) of defendant Enterprise Leasing Company South-Central, Inc. ("Enterprise")[1] for summary judgment.  Pursuant to the court's orders of October 5, 2006 (doc. #24) and April 24, 2007 (doc. #39), only a portion of the claims originally addressed by the second motion for summary judgment remain in this action and are the only claims addressed in this Memorandum Opinion.

## I.    Procedural History

Plaintiff Cherlyn Kinsey commenced this action by filing a complaint in this

---

[1]According to defendant's first motion (doc. #25) for summary judgment, Enterprise Leasing Company South-Central, Inc. is the only company with whom plaintiff has been employed, and therefore it is the only proper defendant.  (See Doc. #25 at 1, n.1.)

court on June 6, 2005, alleging that her current employer, defendant Enterprise, violated Title VII of the Civil Rights Act by denying her promotions because of her race and gender.  (See Doc. #1 at Counts I, II.)  She also alleges that Enterprise violated 42 U.S.C. § 1981 by denying her promotions because of her race, black (see doc. #1 at Count II) and retaliated against her in violation of Title VII and 42 U.S.C. § 1981 (see doc. #1 at Count III).[2]  As relevant here, defendant's December 21, 2006 second motion (doc. #29) for summary judgment addressed all remaining claims and asserts that: (1) all of Kinsey's Title VII claims predating March 15, 2004 are time-barred; (2) plaintiff's Title VII claims concerning the Assistant Branch Manager jobs at Alabama Power Company and the Van Branch are barred for failure to exhaust administrative remedies; (3) the record evidence demonstrates that Kinsey was not denied any promotion because of her race or gender; (4) even if plaintiff can establish a prima facie case of promotion discrimination, the record evidence demonstrates that defendant selected another candidate for legitimate, non-discriminatory reasons; and (5) the record evidence refutes plaintiff's retaliation claim.  (See Doc. #29.)

_____

[2] Plaintiff's initial complaint also alleges pay discrimination (see doc. #1 at ¶¶ 19-20, 27-28) and violations of the Equal Pay Act (see doc. #1 at Count IV).  However, those claims have been dismissed as per the parties' Joint Response (doc. #21) to May 4, 2006 Order.  "The parties hereby stipulate to the dismissal with prejudice of all of Plaintiff's pay discrimination claims as set forth in Count I paragraphs 19-20, Count II paragraphs 26-27, and Count IV."  (Doc. #21 at 2.)

On December 21, 2006, defendant filed a brief (doc. #30) and evidence[3] (doc. #29) in support of its second motion.  Plaintiff filed a response (doc. #33) and evidence[4] (doc. #34) in opposition to the second motion on January 12, 2007. Defendant filed a reply brief (doc. # 35) in support of its second motion for summary judgment on January 29, 2007.

After an initial review of the briefs and evidence related to the then-pending second motion (doc. #29) for summary judgment, the court ordered (doc. #38) the parties to show cause why plaintiff's Title VII claims (as set out in the complaint and limited by the second motion for summary judgment) for gender, race, and retaliatory discrimination should not be dismissed for failure to exhaust administrative remedies. Neither party responded to the show cause order; accordingly, the following Title VII claims were dismissed, with prejudice: (1) Ryan Wood, white male, to Irondale Assistant Branch Manager; (2) Jay Fitzgerald, white male, to Pell City Assistant

_____

[3] Defendant submitted the following evidence: (1) the deposition of Christopher Tanley; (2) the deposition of Jason Bleavins; (3) the declaration of Kirk Ramirez, with exhibits; (4) the declaration of Natasha Yoder, with exhibit; (5) the declaration of David Wroblewski; (6) the declaration of Stephanie Singley; and (7) the declaration of Gary Thornton, with exhibit.  (See Doc. #29 and attachments thereto.)

[4] Plaintiff submitted the following evidence: (1) Rental Review – Cherlyn Kinsey – March 30, 2005; (2) 90 Day Review – Jay Fitzgerald – August 20, 2004; (3) 90 Day Review – Jared Burks – June 21, 2004; (4) Job Posting – Vehicle Repair Coordinator; (5) 90 Day Review – Ryan Wood – August 30, 2004; (6) Recommendation from Dion Bell to Natasha Yoder – November 10, 2004; (7) Management Matrix for ABM position – 5596/1J – March 2005; and (8) declaration of Cherlyn Kinsey.  (See Doc. #34.)

Branch Manager; (3) Jared Burks, white male, to Anniston Assistant Branch Manager; (4) Craig Hansen, white male, to vehicle repair coordinator; (5) Christy White, white female, to Tuscaloosa Assistant Branch Manager; (6) Kevin Rosenberg, white male, to satellite branches Assistant Manager; and (7) Brian Kelly, white male, to Van Branch Manager.[5]  (See Doc. #39).

Thus, the claims remaining in this action and the claims to be considered within the second motion (doc. #29) for summary judgment are the 42 U.S.C. § 1981 race discrimination claims (see Compl. Counts II, III) and the claims associated with the Alabama Power Company position, as that position was filled on September 1, 2004 (see doc. #21, Exh. A at 4).

## II.  Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears

---

[5] Plaintiff conceded that summary judgment was due to be granted with respect to the Van Branch Assistant Manager position.  (See Doc. #33 at 10.)

the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Chapman, 229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  See Chapman, 229 F.3d at 1023; see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See Anderson, 477 U.S. at 249-50.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17, citing United States v. Four Parcels of Real Property, 941 F.2d 1428

(11th Cir. 1991) (en banc).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial).  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that

there is an absence of evidence to support the nonmoving party's case. <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>See Lewis v.</u> <u>Casey</u>, 518 U.S. 343, 358 (1996), citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

## III.   Relevant Undisputed Facts[6]

### A.   Background and the Internal Promotion Process at Enterprise

The court adopts and incorporates herein the background facts and facts related to the internal promotion process at Enterprise as such was set forth in the first Memorandum Opinion (doc. #36) dated February 15, 2007.

---

[6] If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party. <u>See Fitzpatrick</u>, 2 F.3d at 1115.

**B.     Promotion Decision made by Area Manager Jessie Richardson**

**1.     Background on Richardson**

Jessie Richardson held the position of area rental manager in Birmingham from August 2000 until February 2006.  (Richardson Dep. at 7.)  He was promoted to the group rental manager position in early 2006 and is now working for Enterprise in Louisville, Kentucky.  (See id.)

During his tenure in Birmingham, Richardson had the opportunity to work with plaintiff at the Gardendale location.  (See id. at 13.)  He perceived her performance as average, "below average in sales, above average with customers." (Id.)  Moreover, Richardson had the opportunity to interview plaintiff for promotions on several different occasions.  He consistently found her to be "poor at preparation and . . . [without] specific game plans or knowledge." (Id. at 24-25.)  As a result, Richardson offered plaintiff, on several different occasions, the opportunity to meet with him prior to an interview to help her prepare.  (See id. at 37.)  Plaintiff never took Richardson up on this offer.  (See id.)

**2.  The Alabama Power Company Position (ABM 5576)**

In August/September 2004, Enterprise had an opening for Assistant Branch Manager ("ABM") at the Alabama Power Company location.  In accordance with the internal promotion procedure, eleven individuals applied for the position.  (See Exh.

8

1 to Richardson Dep. at D0110.)  Upon review of the matrix, the top five candidates

were selected for interviews.[7]  (See id.)  Those interviews were conducted by

Richardson and Shafton Reese.[8]  (See Richardson Dep. at 43, 47-48.)

Richardson and Reese chose Mitchell for the position.

> The reason Mr. Mitchell was selected over everybody was his [oral]
> action plan, knew the account really well, did a lot of research, and had
> a very specific idea of what needed to be accomplished there.   I
> remember he reached out and asked questions to Devlon and the branch
> manager at the time, Shafton, for that store, and just did his legwork and
> research so when he came to the interview, he had a really strong
> interview.

(Id. at 43-44, 45.)

In contrast, Richardson testified that he did not choose Kinsey for the Alabama

Power Company position because she was habitually "stumped" on basic questions

regarding her goals for the office "that should not be an issue whatsoever with her at

this point in time.[9]  (Id. at 45.)  In fact, Richardson spoke with Kinsey after the

---

[7] Although Ben Mitchell was initially outside of the top 5 according to the matrix, Mitchler withdrew from the interview process thus making Mitchell eligible for an interview. (See Richardson Dep. at 42; see also Exh. 1 to Richardson Dep. at D0110.)

[8] Plaintiff testified that she does not believe that Shafton Reese took any action against her because of her race or gender.  (See Pl. Dep. at 179.)  She does, however, believe that Jessie Richardson took action against her because of her race and gender.  (See id. at 179-80.)

[9] Contrary to plaintiff's assertion, Richardson did not testify that Kinsey had "really done her homework, or she'd been looking at this position real closely."  (See Doc. #33 at 9.)  Instead, Richardson testified that Kinsey *told him* that she had really done her homework and had been looking at the Alabama Power Company position closely.  (See Richardson Dep. at 45.)  Moreover, plaintiff's contention that Richardson admitted he could not remember whether or not

interview and asked her why she missed some of the most basic questions.  (See id.

at 46.)

> Once again I remember reaching out and telling her 'I'll be glad to help you in the future.  This is what you need to do as you prepare for an interview.'  And I have a story that I've told a million times about a tale of two people interviewing for a position.  One coming with a real specific plan and one coming with no plan.  Who would you give the job to if you were in my shoes.  And she said, 'Well, the person with the strong plan who knew how to accomplish the job.'

(Id. at 47.)

Plaintiff *believes* that she was not selected for this position because of her race.

(See Pl. Dep. at 229; see also Doc. #33 at 7-10.)  As to that claim, plaintiff states:

> I felt like I was a better candidate for the position.  I mean, out of all the positions that I put in for, I felt like this one should have been mine . . . I went for this branch here, because I knew 76, Alabama Power, I knew the people that worked there.  I've gone to functions with these people. I know how to work with my customer service when it comes to corporate people.  I even did background history on Alabama Power branch.  I talked to some of the VIPs, and I asked them what were some of the problems that they had . . . what are some of the things I need to do to better Enterprise for this company.  I did my homework for this company.  I stepped up.  And Dion even said, Jessie, Alabama Power is open, you have been calling on this girl to help you out in your area.  I knew I had a fantastic interview.  I know that for a fact.  Shafton called me, I was too laid back in the interview . . .

---

Kinsey was able to answer his questions during their interview (see doc. #33 at 9) is without support from the record.  Richardson testified that he does not have a specific recollection as to whether or not Kinsey was able to answer his questions during the interview.  (See Richardson Dep. at 45-46.)  He does, however, "have a specific recollection of my calling her back and talking with her about her performance in the interview and why she didn't get the job."  (Id. at 46.)

(Pl. Dep. at 230-31, 233.)

### C.   Promotion Decision made by Jason Bleavins – the Irondale Assistant Branch Manager Position (5596/1J)

In March 2005, Enterprise filled an open ABM position in Irondale with Ryan Wood, a white male. (See Doc. #21, Exh. A at 4.) A management matrix was created for this position, and, in accordance therewith, five individuals were interviewed for the position.[10] (See id.) Plaintiff was not interviewed because she matrixed out.[11] (See id.; see also Pl. Dep. at 244, 246.) Bleavins chose Wood for the job because of his prior performance and his interview. (See Bleavins Dep. at 19.) Plaintiff believes that she was not selected for this job because of her race. (See generally Doc. #1.)

### D.   Promotion Decisions made by Chris Tanley

Tanley is an Area Manager for Enterprise. (See Tanley Dep. at 7.) He has held that position for a year and a half, managing the Center Point, Roebuck, Trussville, Pell City, and Anniston offices. (See id. at 8.) As a manager, Tanley has been responsible for filling open positions within his areas. He typically would inform Human Resources of the opening, and thereafter review the matrix and begin calling applicants for interviews. (See id. at 13-14.)

---

[10] Bleavins testified that "typically, when the matrix is put together, we take the top five." (Bleavins Dep. at 15.)

[11] Specifically, Kinsey's performance was lacking in the areas of package sales, employee referrals, corporate leads, and total rank. (See Bleavins Dep. at 17-18.)

### 1.    The Pell City Position (551P)

In January/February 2005, Enterprise filled an open ABM position in Pell City with Jay Fitzgerald, a white male.  (See Doc. #21, Exh. A at 5.)  Twelve individuals applied for the position.  (See id.)  Tanley does not recall if he interviewed plaintiff for this position.  (See Tanley Dep. at 30.)  However, plaintiff claims that she was interviewed for the position at the same time she was interviewed for another position.  (See Pl. Dep. at 246-47.)

Tanley testifies that Fitzgerald was chosen for the Pell City position due to his:

> Very high energy.  That is an outlying location.  He had been very aggressive at the Hoover location with corporate accounts and gaining business, something I desperately needed at that location.  He was just a very strong – he was strong in sales, and I needed someone I could have out there and leave out there as I am not out there that much . . . [Fitzgerald] was ten points higher on the matrix than [Kinsey].

(Tanley Dep. at 34-35.)  Plaintiff believes that she was discriminatorily denied this position because of her race.  (See Pl. Dep. at 250.)  She believes this because "both persons that were selected were both males and both white."  (Id. at 250.)  "I felt like I had a stronger background going in than either one, and I trained them, and I had been with the company longer than both of them."  (Id. at 253.)

### 2.    The Anniston Position (5519)

In April 2005, Enterprise filled an open ABM position in Anniston with Jared

Burks, a white male.  (See Doc. #21, Exh. A at 5.)  Seven individuals applied for the position.  (See id.) Tanley had previous working relationships with all but one of the applicants.  (See Tanley Dep. at 16.) He had a sense that Kinsey's performance at work was "good" based on his experiences watching her perform her job.  (See id. at 19.)  After receiving the management matrix from Human Resources, Tanley interviewed Kinsey for the job.  (See id. at 21.)  Burks was chosen for the position because:

> Well, first, he had been a very steady performer in that branch, and also the Anniston office is an hour from Birmingham; depending on where you live, it could be an hour and a half.  Jared was very eager.  We asked everyone about the drive to Anniston and how it would affect them. Jared was very eager, he did not care.  He would have walked to that location.  It didn't matter to him, so it just made it an easy choice . . . very high energy.

(Id. at 23-24.)  Kinsey was not hired for the position because of her lack of energy and "she was not very eager about the drive.  She was not very excited about the fuel. She brought that up in the interview and so she really wasn't excited about the drive." (Id. at 25.)

Plaintiff believes that she was discriminatorily denied the Anniston position because of her race.  She feels that race factored into the decision because "I was a stronger candidate than them, so I feel they were chose, you know, coming from them being male and they're white."  (Pl. Dep. at 253.)

13

**F.     Promotion Decision made by Natasha Yoder and Dave Wroblewski
– The Vehicle Repair Coordinator Position**

In November 2004, Enterprise filled an open vehicle repair coordinator position with Craig Hansen, a white male.  (See Doc. #21, Exh. A at 6.)  Four individuals applied for the position and all were interviewed.  (See id.)  Because this was not a retail rental job, no management matrix was required.  (See Yoder Decl. at ¶ 3.)  Interviews for the position were conducted by Natasha Yoder, Regional Vehicle Repair Manager for Central and Northern Alabama and Dave Wroblewski, Regional Loss Control Manager.  (See id.)  The individual selected for the position would effectively be Yoder's assistant.  (See Pl. Dep. at 257.)

Yoder and Wroblewski chose Hansen for the job because "he was better prepared for his interview and was more excited to be in this department than the other candidates."  (Yoder Decl. at ¶ 3.)   In contrast, Kinsey provided vague responses to interview questions and had difficulty communicating her plan of action.  (See id.; see also Wroblewski Decl. at ¶ 3.)  Moreover, Kinsey "indicated that she had learned about the job over the last couple of days which indicated to me that she only started investigating this job after she learned she was receiving an interview.  In addition, she indicated that one of her reasons for seeking this job was to see what else the Company had to offer.  That response indicated to me that she was more

14

interested in leaving her current job than working in Vehicle Repair." (Yoder Decl. at ¶ 3.) Yoder spoke with Kinsey after the interview and explained why she did not choose plaintiff for the job. (<u>See</u> Pl. Dep. at 261-62.) "She came back after the interview and said . . . we didn't go with you because I asked you a question about [running] paint [on a car you picked up from the body shop] . . . you did not take it back to the body shop . . ." (<u>Id.</u>)

Plaintiff believes that she was discriminatorily denied this position because of her race. (<u>See</u> Pl. Dep. at 258-29; 264.) As to her race claim, Kinsey testified:

> Because I felt Craig was – he's a white male going in, and I trained Craig. I knew – like I say, as far as going into this interview, like I said with all of my interviews, I call and I do research on the position I am applying for. I called several different people. I called St. Louis, New Jersey, Montgomery, and talked to several vehicle repair people, and they gave me great tips on going into this interview. And when the questions were asked in the interview, I answered their questions. And the question was asked of me, well, how do you know going into this, you know, we're not having the position open, and I gave them the response; whereas, I called different areas that have vehicle repair, and I've talked with them, asking them what were some of the things that, you know, I needed to take into my interview; some of the things I needed to put in my package to say what I was bringing to vehicle repair. And I know I had a strong interview.

(<u>Id.</u> at 259-60.)

### G.   Promotion Decision made by Stephanie Singley – the Tuscaloosa Assistant Branch Manager Position (5517)

In February 2005, Enterprise filled an open Tuscaloosa ABM position with

Christy White, a white female.  (See Doc. #21, Exh. A at 6.)  Eleven individuals

applied for the position and seven were interviewed.  (See id.)  Kinsey was not among

those interviewed for the position because she matrixed out due to her low ESQI

scores.  (See Pl. Dep. at 266.)

Singley chose White for the position because "Tuscaloosa is a large branch and

I believed her experience as an Assistant Manager was critical to the success of that

location.  Ms. White's race was not a factor in this decision.  Ms. White's gender was

not a factor in this decision.  I did not consider the race or gender of any applicant in

making the decision to select Ms. White for this job."  (Singley Decl. at ¶ 3.)

### H.     Promotion Decisions made by Kirk Ramirez and Cliff Stevenson – Satellite Branches (5516, 551L, and 551C)

In February 2006, Enterprise filled open Assistant Manager positions in

satellite branches 5516, 551L, and 551C with Kevin Rosenberg, a white male.  (See

Doc. #21, Exh. A at 7.)  Thirteen individuals applied for the position and seven were

interviewed.  (See id.)  Kinsey was not among those interviewed for these positions

because of her low ESQI score.  (See Pl. Dep. at 266.)  In fact, Ramirez called Kinsey

and informed her that this was the reason she would not be interviewed, specifically

stating that she needed to "get with all the people at the branch and come up with

some strategy or tactic of getting our ESQI number up."  (Id. at 266-67.)  Kinsey does

16

not believe that Ramirez has ever taken any action against her because of her race,

however, she does believe that she was discriminatorily denied this position because

of her race.  (See id. at 266-67.)

Enterprise articulates that Rosenberg was selected for the position because:

> he was #1 on the matrix, second overall sales, articulated a good plan for
> running the operations such as running tighter on the weekends,
> increasing sales by creating a competitive atmosphere between the
> branches, and improving employee development.  In addition, he had
> demonstrated success in increasing corporate sales and income.

(Ramirez Decl. at ¶ 5.)

## IV.   Applicable Substantive Law and Analysis

Plaintiff's complaint alleges, as relevant here,[12] that Enterprise discriminated

---

[12] In accordance with the court's October 5, 2006 order (doc. #24), the proper subject of any first motion for summary judgment should have been 11 positions: (1) John Warnock, white male, to Gardendale Assistant Manager; (2) Kara Dehart, white female, to Southern Company Services Assistant Manager; (3) Robert Halloway, white male, to Trussville Assistant Manager; (4) John Bailey, black male, to Downtown Assistant Manager; (5) Christy White, white female, to Tom Williams Assistant Manager; (6) Daniel Spencer, black male, to Pell City Assistant Manager; (7) Scott Kraft, white male, to Trussville Assistant Manager; (8) Ten Clay, white male, to truck leasing management assistant; (9) Cathy Loftin, white female, to HR Manager; (10) Ben Mitchell, white male, to Alabama Power Company Assistant Manager; and (12) Brain Kelly, white male, to Van Branch.  However, defendant apparently mis-read the court's order (doc. #24) and included the Alabama Power Company and Van Branch positions within its second motion for summary judgment.  (See Doc. #31 at 3; see also Doc. #30 at 2-4 and Doc. #26.)  Because plaintiff was not prejudiced in any way by this error, the court allowed the second motion for summary judgment to include the positions which were mistakenly omitted from the first motion for summary judgment.  (See Doc. #36 at 9, n.9.)

Thus, the following positions are considered herein: (1) Ben Mitchell, white male, to Alabama Power Company; (2) Ryan Wood, white male, to Irondale Assistant Branch Manager; (3) Jay Fitzgerald, white male, to Pell City Assistant Branch Manager; (4) Jared Burks, white

against her by denying her promotions to seven different positions.[13]  (See generally Compl.; see also Doc. #33 at 7-16.)  Defendant's second motion (doc. #29) for summary judgment, as amplified in its brief in support thereof, asserts that: (1) all of Kinsey's Title VII claims predating March 15, 2004 are time-barred; (2) Kinsey's Title VII claims concerning the Assistant Manager jobs at Alabama Power Company and the Van Branch are barred for failure to exhaust administrative remedies; (3) the record evidence demonstrates that Kinsey was not denied any promotion because of her race or gender; (4) even if Kinsey can establish a prima facie case of promotion discrimination, the record evidence demonstrates that Enterprise selected another candidate for legitimate, non-discriminatory reasons; and (5) the record evidence refutes plaintiff's retaliation claim.  (See Doc. #29.)

---

male, to Anniston Assistant Branch Manager; (5) Craig Hansen, white male, to vehicle repair coordinator, (6) Christy White, white female, to Tuscaloosa Assistant Branch Manager; and (7) Kevin Rosenberg, white male, to satellite branches Assistant Manager.  (See Doc. #21, Exh. A at 4-7; see also Docs. #38, 39.)

[13] At times Kinsey characterizes her race and gender discrimination claims as one ongoing discriminatory pattern.  However, while the overall course of events is certainly relevant, because the McDonnell Douglas approach is designed to focus the court's inquiry on the reasons for a particular decision, the court will analyze separately each of the promotion decisions at issue. See Alexander v. Chattahoochee Valley Comm. College, 325 F. Supp. 2d 1274, 1281 (M.D. Ala. 2004).

**A.    Title VII Discrimination in Failure to Promote (Count I) – Failure to Exhaust Administrative Remedies for the Title VII Gender and Race Claims Related to the Alabama Power Company Position for Which Ben Mitchell was Selected.[14]**

Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit.  See Nat'l R.R. Corp. v. Morgan, 536 U.S. 101, 109 (2002).  While the requirement that an Equal Employment Opportunity Commission ("EEOC") charge be timely filed is not jurisdictional in nature, the requirement is a condition precedent to the maintenance of an action and the plaintiff bears the burden of demonstrating that the condition has been satisfied.  See Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1010 (11th Cir. 1982).  As related hereto, although plaintiff filed a charge of discrimination with the EEOC on September 10, 2004, alleging "continuing" discrimination on the basis of her race and gender, (see doc. #11), that charge (No. 130-2004-04372) failed to allege that the Alabama Power Company ABM position was filled discriminatorily. (See Doc. #21, Exh. A at 4.)  No other charge was ever filed with the EEOC which arguably could cover this position.

Therefore, defendant's motion for summary judgment as it relates to the Title VII claims for the Alabama Power Company position is due to be granted.

---

[14] The only Title VII claim remaining for consideration within this memorandum opinion is this one.  (See Doc. #39.)

**B.     42 U.S.C. § 1981 Race Discrimination in Failure to Promote (Count II)**

Plaintiff alleges that she was discriminatorily denied seven positions because of her race in violation of 42 U.S.C. § 1981: (1) the September 1, 2004 Alabama Power Company position for which Ben Mitchell was selected; (2) the March 21, 2005 Irondale position for which Ryan Wood was selected; (3) the February 1, 2005 Pell City position for which Jay Fitzgerald was selected; (4) the April 3, 2005 Anniston position for which Jared Burks was selected; (5) the November 22, 2004 vehicle repair coordinator position for which Craig Hansen was selected; (6) the February 1, 2005 Tuscaloosa position for which Christy White was selected; and (7) the February 6, 2006 satellite branches position for which Kevin Rosenberg was selected.  (See Doc. #33 at 17-18; see also generally Compl.)

The Eleventh Circuit applies the same analytical framework to Title VII and § 1981 race discrimination claims.  See Hudson v. Mr. Burch Formal Wear, Inc., 2006 WL 2351837, No. 05-16269, at *1 (11th Cir. Aug. 15, 2006), citing Cooper v. Southern Co., 390 F.3d 695, 724-25 (11th Cir. 2004)).   Thus, to establish discrimination in a failure to promote case using circumstantial evidence,[15] the plaintiff must show: (1) that she belongs to a protected class; (2) that she applied for

---

[15] Plaintiff concedes that this is a circumstantial evidence case.  (See Doc. #33 at 16-17.)

and was qualified for the position for which the employer was seeking applicants; (3) that she was denied the promotion; and (4) that another equally or less qualified individual outside of the protected class received the promotion or that the position remained open.  See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005); see also Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004). After the plaintiff has produced evidence sufficient to establish her prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the failure to promote.  See Vessels, 408 F.3d at 767; see also Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642-43 (11th Cir. 1998).   Upon articulation, the burden shifts back to the plaintiff to prove that the articulated reason acted as a pretext for discrimination.  See id. at 643; see also McDonnell Douglas v. Green, 411 U.S. 792, 802-03 (1973).

For purposes of summary judgment, the court assumes that plaintiff has established a prima facie case of race discrimination for the seven positions at issue here.

### 1.    The Alabama Power Company Position

Enterprise articulates that Mitchell was chosen for the position because he had an oral action plan, knew the account well, had a specific idea of what needed to be accomplished, and interviewed well.  (See Richardson Dep. at 43-44, 45.)  These are

legitimate, non-discriminatory reasons to select Spencer over Kinsey for the promotion. The subjectivity of some of the articulated reasons does not make them any less legitimate.

> Subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy. Take, for example, a job requiring continued interaction with the public, such as a sales clerk or wait staff position. Attitude, articulateness, and enthusiasm, as well as appearance, can be vitally important in a job, yet there are few if any ways to gauge such qualities objectively or from a written application. Interviews give prospective employers a chance to see if an applicant has the kind of personal qualities a service job requires and can be the best way an employer has to determine how a person interacts with others . . . Personal qualities also factor heavily into employment decisions concerning supervisory or professional positions.

Chapman, 229 F.3d at 1033-35. Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Kinsey to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons were pretextual for race discrimination. See Chapman, 229 F.3d at 1028. Counsel for plaintiff has the following theories on pretext: (1) Kinsey was better qualified for the position and had more experience than Mitchell (see doc. #33 at 7-10, 30-32); (2) Shafton Reese told Kinsey (before the ABM Alabama Power Company position was filled) that she was a good employee and he wished they had hired Kinsey for another position (see doc. #33 at 9); (3) Kinsey's branch manager, Dion Bell, wrote in an

evaluation that Kinsey was "ready for the next step which is assistant manager," yet was not contacted by Richardson during the decision-making process (see doc. #33 at 8-9); (4) Enterprise was inconsistent in articulating factors considered in the decision-making process (see doc. #33 at 20-24); and (5) Enterprise manipulated the matrix system (see doc. #33 at 8, 24-28). Plaintiff herself adds that she was the better candidate for the position because of her background with the company. (See Pl. Dep. at 234.)

Plaintiff's pretext argument 1 as outlined above is premised on the notion that qualifications evidence may suffice in at least some circumstances, to show pretext. (See Doc. #33 at 30-32.)   While that statement is correct, those disparities in qualifications "must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004). Here, the only evidence plaintiff has in purported support of this standard is:

- At the time Mitchell was promoted, he had been with Enterprise 13 months less than Kinsey;

- Mitchell had passed his grill only four months prior to promotion;

- Mitchell had been on probation for his poor driving record and had a written reprimand in his file; and

23

• Mitchell had not worked in the airport location, nor had he worked at large, busy stores such as Hoover or Roebuck.

(Doc. #33 at 8-10; <u>see</u> <u>also</u> Pl. Dep. at 234.)  Clearly, even given this evidence, a reasonable person in the exercise of impartial judgment could easily have chosen Mitchell over Kinsey for the promotion, especially given the undisputed articulated legitimate, non-discriminatory reasons for Mitchell's promotion over Kinsey.

Indeed, plaintiff makes no attempt to rebut Enterprise's articulated reasons for choosing Mitchell for the position.

> A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

<u>Chapman</u>, 229 F.3d at 1030; <u>see</u> <u>also</u> <u>Ash v. Tyson Foods, Inc.</u>, 190 Fed. Appx. 924, 927 (11th Cir. 2006), citing <u>Brooks v. County Commission of Jefferson County, Ala.</u>, 446 F.3d 1160 (11th Cir. 2006); <u>Watkins v. City of Huntsville</u>, 176 Fed. Appx. 955 (11th Cir. 2006); <u>Roper v. City of Foley Police Dept.</u>, 177 Fed. Appx. 40 (11th Cir. 2006); and <u>Price v. M&H Valve Co.</u>, 177 Fed. Appx. 1 (11th Cir. 2006).  Thus, her argument on disparities in qualifications to demonstrate pretext fails.

Plaintiff's pretext argument 2 as outline above is premised on the fact that

24

Shafton Reese told Kinsey that he wished they had selected her for a position *other than* the Alabama Power Company position and that she showed leadership, was great with customers, helped him out, and wished he could have kept her longer at his branch. (See Doc. #33 at 9.)  These comments, however positive, have no bearing whatsoever on the Alabama Power Company position.  Reese did not tell Kinsey that she was the best candidate for the Alabama Power Company position nor that she had the best interview and/or plan for that position. (See Doc. #33 at 9.)  Indeed, Kinsey herself does not believe that Reese took any action against her because of her race. (See Pl. Dep. at 179.)  Thus, plaintiff's argument regarding Reese's comments to demonstrate pretext fails.

Plaintiff's pretext argument 3 as outlined above is premised on the fact that Kinsey's supervisor, Dion Bell, mentioned that Kinsey was ready for the next step yet was not contacted for more information in conjunction with this promotion decision. (See Doc. #33 at 9-10.)  This argument harkens back to pretext argument 1 above, and fails for the same reasons.

Plaintiff's pretext argument 4 as outlined above is premised on the fact that the position statement provided by counsel for defendant to the EEOC is inconsistent with decisionmakers' testimony. (See Doc. #33 at 20-24.)  Indeed the position statement clearly asserts that "after applying the matrix to decide who will get an

interview, [Enterprise] makes promotion decisions based *solely* on the interviewees' interviewing skills." (Id. at 20.)  In contrast, various decisionmakers testified that, in addition to interview skills, they considered factors such as work attitude, prior work performance, performance evaluations, experience, recommendations from area managers, and even matrix scores in deciding who would be awarded the position. (See, e.g., Richardson Dep. at 33, 39; Bell Dep. at 55-56; Pl. Dep. at 149.)

The EEOC position statement is not evidence in this case and cannot be used to create an issue of fact.  See Bowden v. Wal-Mart Stores, Inc., 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) (pleadings are not evidence).  Pleadings are not evidence in part because they are written by retained counsel.  There is no evidence that the EEOC position statement, signed by counsel of record Fern Singer, was ever reviewed by anyone at Enterprise.  See also Chapman, 229 F.3d at 1038 (where position statement, prepared by employee of defendant and reviewed by decisionmaker, was redacted at trial, such redaction was harmless error).  Moreover, to the extent plaintiff is arguing pretext in that different decisionmakers considered different factors in making promotion decisions, (see doc. #33 at 21-24), that argument is also without merit.  See Chapman, 229 F.3d at 1031, n.21 ("Different decisionmakers are entitled to be concerned about different things");  see also Bassano v. Hellman Worldwide Logistics, Inc., 310 F. Supp.2d 1270, 1280 (N.D. Ga.

2003).

Pretext argument 5 as outlined above is premised on the argument that "Mitchell was not in the top five employees on the Management Matrix for the open position . . . [yet] was interviewed, despite his low numbers, because another candidate allegedly decided he was not interested in the position." (Doc. #33 at 8.) Apparently, plaintiff believes this argument will advance her theory of pretext despite the fact that she has no evidence to dispute Enterprise's reason for interviewing number six on the matrix *and* despite the fact that Kinsey herself was given the opportunity to interview for the position. (See Doc. #21, Exh. A at 4; see also Pl. Dep. at 230-31, 233.) Thus, even making the giant assumption that the matrix was manipulated, it was manipulated in a manner that did not prevent Kinsey the opportunity to provide the best interview for the position.

Accordingly, defendant's motion for summary judgment as it relates to plaintiff's claim that she was discriminatorily denied the Alabama Power Company position because of her race in violation of § 1981 is due to be granted.

### 2.      The Irondale Position (5596/1J)

Enterprise articulates that Wood was chosen for the Irondale position because of his prior work performance and his interview. (See Bleavins Dep. at 19.) These are legitimate, non-discriminatory reasons to select Spencer over Kinsey for the

27

promotion.[16]  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Kinsey to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028.  Counsel for plaintiff has the following theories on pretext: (1) Enterprise was inconsistent in articulating factors considered in the decision-making process (see doc. #33 at 20-24); (2) Enterprise manipulated the matrix system (see doc. #33 at 10-11, 24-28); and (3) disparities in qualifications show pretext (see doc. #33 at 10).

Pretext argument 1 as outlined above fails for the same reasons it did in Section IV.B.1.  Not only is the EEOC position statement not evidence in this case, but different decisionmakers are entitled to be concerned about different things.  See Bowden, 124 F. Supp.2d at 1236 and Chapman, 229 F.3d at 1031, n. 21.

Pretext argument 2 is grounded on the premise that "Enterprise's use and application of the matrix is inconsistent and manipulated in a manner that has favored whites and males."  (Doc. #33 at 24.)  Specifically, plaintiff argues that she was denied an interview for this position because, although her performance was lacking in the areas of package sales, employee referrals, corporate leads, and total rank, (see Pl. Dep. at 244, 246; see also Bleavins Dep. at 17-18), Enterprise failed to manipulate

---

[16] See discussion supra on the subjectivity of the articulated reasons at Section IV.B.1.

the matrix to favor her, a black female, in the same way it "manipulated" the matrix to favor white males.  (<u>See</u> Doc. #33 at 28.)  However, there is no allegation that Bleavins himself, the decisionmaker for the Irondale position, "manipulated" the matrix.  In fact, it is undisputed that Bleavins "typically" took the top five from the matrix to interview.  (Bleavins Dep. at 15.)  He did so with respect to the Irondale position, thus "matrixing out," in addition to Kinsey, three white males and two white females.  (<u>See</u> Doc. #21, Exh. A at 4.)  Thus, the manipulation of the matrix argument fails to establish pretext.

Pretext argument 3 is at the heart of plaintiff's dispute with the decision to promote Wood over herself to the Irondale position.  Specifically, she states that:

> At the time Wood was promoted, he had only been with Enterprise since May 17, 2004, approximately two years less than Kinsey.  Wood was not even scheduled to take his 'grills' until January 31, 2005.  While Wood was still a Trainee, Kinsey had two and one-half years with the company and her evaluation stated that she was ready to be an Assistant Manager.

(Doc. #33 at 31-32.)  Plaintiff recognizes in her brief that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over plaintiff for the job in question."  <u>Cooper</u>, 390 F.3d at 732; <u>see also</u> <u>Drakeford v. Alabama Co-op.</u> <u>Extension Sys.</u>, 425 F.Supp.2d 1274, 1276 (M.D. Ala. 2006) ("For the plaintiff to

establish pretext, she must have qualifications that substantially outweigh or are clearly superior to those of the successful applicant"). Although plaintiff had passed her grills while Wood had not, (see doc. #34, exh. 5 at D0688), this, along with the seniority factor, is not enough to establish pretext under Cooper. It is true that Wood was a Trainee while Kinsey was "seasoned." But Wood's qualifications exceeded plaintiff's at Bleavins' initial review of the candidates – plaintiff herself admitted that she was notified that her performance was lacking in the areas of package sales, employee referrals, corporate leads, and total rank. (See Pl. Dep. at 244, 246; see also Bleavins Dep. at 17-18.) Thus, it was not unreasonable for Bleavins to deny an interview to Kinsey and ultimately select Wood for the Irondale position. See Cooper, 390 F.3d at 732.

For the aforementioned reasons, defendant's summary judgment motion as it relates to the § 1981 claim regarding the Irondale position is due to be granted.

### 3.   The Pell City Position (551P)

Enterprise articulates that it chose Fitzgerald for the Pell City position because he had high energy, was aggressive about getting corporate accounts, was strong on sales, and could work without supervision. (See Tanley Dep. at 34-35.) These are legitimate, non-discriminatory reasons to select Fitzgerald over Kinsey for the

promotion.[17]  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Kinsey to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028.  Counsel for plaintiff has the following theories on pretext: (1) Enterprise was inconsistent in articulating factors considered in the decision-making process (see doc. #33 at 20-24); (2) Enterprise manipulated the matrix system (see doc. #33 at 24-28); and (3) disparities in qualifications show pretext (see doc. #33 at 12-13, 30-32).

Pretext argument 1 as outlined above fails for the same reasons it did in Section IV.B.1.  Not only is the EEOC position statement not evidence in this case, but different decisionmakers are entitled to be concerned about different things.  See Bowden, 124 F. Supp.2d at 1236 and Chapman, 229 F.3d at 1031, n. 21.

Pretext argument 2 is grounded on the premise that "Enterprise's use and application of the matrix is inconsistent and manipulated in a manner that has favored whites and males."  (Doc. #33 at 24.)   However, according to plaintiff's own testimony, she was interviewed for the Pell City position.[18]  (See Pl. Dep. at 246-47.)  Thus, even making the giant assumption that the matrix was manipulated, it was

---

[17] See discussion supra on the subjectivity of the articulated reasons at Section IV.B.1.

[18] Because this is a disputed fact, (see Tanley Dep. at 30), plaintiff's version is accepted as true for summary judgment purposes.

manipulated to *favor* the plaintiff, not to discriminate against her.

Pretext argument 3 is at the heart of plaintiff's dispute with the decision to promote Fitzgerald over herself to the Pell City position. Specifically, she states that:

> Kinsey had a stronger background than Fitzgerald due, in part, to her much longer tenure with the company. During this time, Kinsey was performing at a very high level at the Roebuck branch. By contrast, Fitzgerald just had his first 90 day review on August 20, 2004, and at that time, his supervisor's comment was that Fitzgerald 'needs to be exposed to more of the back-end of the business . . . Jay needs to be pro-active in asking why we run our business in order to gain insight into being a successful manager.' Fitzgerald's August 20, 2004 review indicates that he has not yet passed his 'grills' and was not scheduled to until December of 2004, approximately one month prior to his promotion . . . Fitzgerald had worked for the company for only a little more than six months when he was promoted. At the time of Fitzgerald's promotion, Kinsey had been with the company for two and one-half years.

(Doc. #33 at 12-13.) Plaintiff recognizes in her brief that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over plaintiff for the job in question." Cooper, 390 F.3d at 732; see also Drakeford, 425 F. Supp.2d at 1276 ("For the plaintiff to establish pretext, she must have qualifications that substantially outweigh or are clearly superior to those of the successful applicant"). Here, plaintiff has attempted to meet this burden by asserting her seniority and "high" level of performance. (See Doc. #33 at 12-13.) Seniority, of course, "is not the measure."

Higgins v. Tyson Foods, Inc., 196 Fed. Appx. 781, 784 (11th Cir. Aug. 28, 2006).
And while plaintiff's "high" level of performance is instructive, it fails to establish,
even in connection with the seniority, that "no reasonable person" could have chosen
Fitzgerald over Kinsey.  See Cooper, 390 F.3d at 732.  Fitzgerald was chosen for the
position because of his high energy, aggressiveness about getting corporate accounts,
performance in sales, and ability to work without supervision.  (See Tanley Dep. at
34-35.)  Plaintiff has not challenged the validity of these articulated reasons, and  has
not presented a preponderance of evidence probative of the alleged discrimination.
See Higgins, 196 Fed. Appx. At 784 (citing Deines v. Texas Dept. of Protective &
Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)).

Thus, for the aforementioned reasons, defendant's summary judgment motion
as it relates to the § 1981 claim regarding the Pell City position is due to be granted.

### 4.    The Anniston Position (5519)

Enterprise articulates that it chose Burks for the Anniston position because he
was a steady performer and was willing and eager to make the drive from
Birmingham to Anniston.  (See Tanley Dep. at 23-24.)  These are legitimate, non-
discriminatory reasons to select Spencer over Kinsey for the promotion.[19]  Thus, the
presumption of discrimination is eliminated, thereby shifting the burden to Kinsey to

---

[19] See discussion supra on the subjectivity of the articulated reasons at Section IV.B.1.

come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028.  Counsel for plaintiff has the following theories on pretext: (1) Enterprise was inconsistent in articulating factors considered in the decision-making process (see doc. #33 at 20-24); (2) Enterprise manipulated the matrix system (see doc. #33 at 24-28); and (3) disparities in qualifications show pretext (see doc. #33 at 13, 30-32).

Pretext argument 1 as outlined above fails for the same reasons it did in Section IV.B.1.  Not only is the EEOC position statement not evidence in this case, but different decisionmakers are entitled to be concerned about different things.  See Bowden, 124 F. Supp.2d at 1236 and Chapman, 229 F.3d at 1031, n. 21.

Pretext argument 2 is grounded on the premise that "Enterprise's use and application of the matrix is inconsistent and manipulated in a manner that has favored whites and males."  (Doc. #33 at 24.)  However, plaintiff was interviewed for the Anniston position (see Pl. Dep. at 246-47) and there is no allegation that someone was interviewed who "should not" have been interviewed (see doc. #33 at 24-28). Thus, the manipulation of the matrix argument fails on pretext.

Pretext argument 3 is at the heart of plaintiff's dispute with the decision to promote Fitzgerald over herself to the Pell City position.  Specifically, she states that:

> Burks was promoted during March 2005; however, he had just passed his 'grills' a few months earlier in December 2004. Also, Burks just had two months of experience working as a Management Assistant prior to his promotion to Assistant Branch Manager. In stark contrast, Kinsey passed her grills in March 2003, and was ready to become an Assistant Branch Manager approximately one year earlier according to her direct supervisor Dion Bell. Burks was not even hired until March 29, 2004, almost two years after Kinsey. Thus, when Burks was in his first month of training, Kinsey was fully ready to become an Assistant Branch Manager. The difference in qualifications between Kinsey and Burks is so great, that no reasonable person, engaging in an impartial evaluation of their qualifications, could come to the conclusion that Burks was the more qualified candidate for promotion to Assistant Branch Manager at the Anniston branch.

(Doc. #33 at 30-31.) Plaintiff recognizes in her brief that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over plaintiff for the job in question." Cooper, 390 F.3d at 732; see also Drakeford, 425 F. Supp.2d at 1276 ("For the plaintiff to establish pretext, she must have qualifications that substantially outweigh or are clearly superior to those of the successful applicant"). Here, plaintiff is arguing, in effect, that her seniority trumps Burks' qualifications. Such is not the case. See Higgins, 196 Fed. Appx. 781 at 784. Burks was chosen for the position because of his steady job performance and his readiness to drive to Anniston. (See Tanley Dep. at 23-24.) Plaintiff has not challenged the validity of these articulated reasons, and has not presented a preponderance of evidence probative of the alleged

35

discrimination.  See Higgins, 196 Fed. Appx. at 784, citing Deines, 164 F.3d at 280-81).

For the aforementioned reasons, defendant's summary judgment motion as it relates to the § 1981 claim regarding the Anniston position is due to be granted.

### 5.    The Vehicle Repair Coordinator Position (55MM)

Enterprise articulates that it chose Hansen for the vehicle repair coordinator position because he was better prepared for the interview and was more excited to be in the department that the other candidates.  (See Yoder Decl. at ¶ 3.)  These are legitimate, non-discriminatory reasons to select Spencer over Kinsey for the promotion.[20]  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Kinsey to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028.  Counsel for plaintiff has the following theories on pretext: (1) Enterprise was inconsistent in articulating factors considered in the decision-making process (see doc. #33 at 20-24); (2) Enterprise manipulated the matrix system (see doc. #33 at 24-28); and (3) Enterprise offered inconsistent explanations for not promoting Kinsey to this position (see doc. #33 at 28-30).

Pretext argument 1 as outlined above fails for the same reasons it did in Section

_____

[20] See discussion supra on the subjectivity of the articulated reasons at Section IV.B.1.

IV.B.1.  Not only is the EEOC position statement not evidence in this case, but different decisionmakers are entitled to be concerned about different things.  See Bowden, 124 F. Supp.2d at 1236 and Chapman, 229 F.3d at 1031, n. 21.  Pretext argument 2 fails because no management matrix was created for this position and all applicants for the job were interviewed.  (See Yoder Decl. at ¶¶ 2,3; see also Wroblewski Decl. at ¶ 2.)

Pretext argument 3 is at the heart of plaintiff's dispute with the decision to promote Hansen over herself for the vehicle repair coordinator position.  Specifically, she states that:

> Yoder testified that Kinsey was not selected due to her difficulty communicating her plan of action for the job.  Yoder also inferred that Kinsey only started researching the vehicle repair position after Kinsey was told she would be interviewed.  Yoder drew this inference from Kinsey's comment that she learned about the vehicle repair position in the days leading up to the interview.  However, the job posting created by Yoder for the position began with the question 'Are you interested in learning more about our vehicle repair process?' . . . Kinsey was told by Yoder the reason she was not selected for the position was because on one occasion Kinsey picked up a car from a dealership that had running paint on it and she brought the running paint to the attention of her branch manager rather than personally taking the car back to the dealership . . . Notably, this incident concerning a car with defective paint was not mentioned on the Promotion Flow Log regarding the reasons that Kinsey was not selected.

(Doc. #33 at 14-15, 28-30.)  Thus, according to plaintiff, Enterprise has been "inconsistent," providing "shifting and irrational reasons" for the decision not to

promote Kinsey to the vehicle repair coordinator position, thus establishing pretext. (Id. at 29.)  In purported support of this contention, plaintiff cites to a decision from the First Circuit holding "when a company . . . gives different and arguably inconsistent explanations, a jury may infer that the reasons are pretextual." Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431-33 (1st Cir. 2000). "Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext."  Id., quoting Kobrin v. Univ. of Minnesota, 34 F.3d 698, 703 (8th Cir. 1994).  However, here, Enterprise has *not* made substantial changes to its proffered reasons for choosing another candidate over Kinsey for the vehicle repair coordinator position.  Instead, Enterprise has consistently offered *multiple* reasons for choosing Hansen over Kinsey.  Plaintiff makes a huge leap in insinuating that the comments made on the Promotion Flow Log are inconsistent with the comments made directly to Kinsey after the interview.  (See Exh. A to Yoder Decl.; see also Pl. Dep. at 261-64.)

For the aforementioned reasons, defendant's summary judgment motion as it relates to the § 1981 claim regarding the vehicle repair coordinator position is due to be granted.

### 6.    The Tuscaloosa Position (5517)

Enterprise articulates that it chose White for the Tuscaloosa position because

of her experience as an Assistant Manager.  (See Singley Decl. at ¶ 3.)  This is a legitimate, non-discriminatory reason to select White over Kinsey for the promotion. Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Kinsey to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028. Counsel for plaintiff has the following theories on pretext: (1) Enterprise was inconsistent in articulating factors considered in the decision-making process (see doc. #33 at 15, 20-24); and (2) Enterprise manipulated the matrix system (see doc. #33 at 15, 24-28).

Pretext argument 1 as outlined above fails for the same reasons it did in Section IV.B.1.  Not only is the EEOC position statement not evidence in this case, but different decisionmakers are entitled to be concerned about different things.  See Bowden, 124 F. Supp.2d at 1236 and Chapman, 229 F.3d at 1031, n. 21.

Pretext argument 2 is premised on the fact that of the eleven individuals who applied for the Tuscaloosa position, seven were interviewed, "in violation of Enterprise's alleged policy of only interviewing the top five candidates.  Kinsey was number eight on the matrix and she did not receive an interview." (Doc. #33 at 15.) This argument fails to hold water.  There is no evidence in the record that Singley, the decisionmaker for the Tuscaloosa position, believed she was violating company

policy by interviewing seven individuals for the position.  (See generally Singley Decl.)  The matrix for this position is not in the record, thus making it impossible to theorize that it was "manipulated."  (See id.)  Perhaps more importantly, there is no evidence to suggest that Singley intended to discriminate against Kinsey because of her race.  (See id.)  In fact, all of the evidence is to the contrary.  (See id.)

For the aforementioned reasons, defendant's summary judgment motion as it relates to the § 1981 claim regarding the Tuscaloosa position is due to be granted.

### 7.    The Satellite Branches Position (5516/1L/1C)

Enterprise articulates that it chose Rosenberg for the satellite branches position because of his high ranking on the matrix, his high overall sales, his plan for running the operations, and his success in increasing corporate sales and income.  (See Ramirez Decl. at ¶ 5.)  These are legitimate, non-discriminatory reasons to select Rosenberg over Kinsey for the promotion.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Kinsey to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028.  Counsel for plaintiff has the following theories on pretext: (1) Enterprise was inconsistent in articulating factors considered in the decision-making process (see doc. #33 at 15-16, 20-24); and (2) Enterprise manipulated the matrix system (see doc. #33 at 15, 24-28).

Pretext argument 1 as outlined above fails for the same reasons it did in Section IV.B.1.  Not only is the EEOC position statement not evidence in this case, but different decisionmakers are entitled to be concerned about different things.  <u>See</u> <u>Bowden</u>, 124 F. Supp.2d at 1236 and <u>Chapman</u>, 229 F.3d at 1031, n. 21.

Pretext argument 2 is grounded on the premise that "Enterprise's use and application of the matrix is inconsistent and manipulated in a manner that has favored whites and males." (Doc. #33 at 24.)  Apparently, plaintiff's argument is that even though her ESQI score was admittedly low, (<u>see</u> Pl. Dep. at 266-67), she should nevertheless have been considered for the position.  However, there is no allegation that Ramirez himself, the decisionmaker for the satellite branches position, "manipulated" the matrix.  In fact, the evidence reveals that Ramirez interviewed the top five candidates based on his review of the matrix, accounting for the three individuals who tied for fifth place.  (<u>See</u> Exh. A to Ramirez Decl.)  Moreover, not only does Kinsey admit that matrix scores are not influenced by race, (<u>see</u> Pl. Dep. at 58, 61, 63-64), but she also testifies that she does not believe Ramirez has ever taken any action against her because of her race  (<u>see</u> Pl. Dep. at 267).

Thus, for the aforementioned reasons, defendant's summary judgment motion as it relates to the § 1981 claim regarding the satellite branches position is due to be granted.

### C.     Retaliation under 42 U.S.C. § 1981 – Count III

A prima facie case of retaliation is established when the plaintiff demonstrates: (1) that she engaged in statutorily protected activity; (2) that an adverse employment action occurred; and (3) that the adverse action was causally related to her protected activities.  See Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999); see also Standard, 161 F.3d at 1330 (noting that Title VII and § 1981 have the same requirements of proof and use the same analytical framework) and Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002) (noting that courts properly apply cases from Title VII and § 1981 interchangeably).  To establish a causal connection, a plaintiff must show that the decision-maker was aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated.  See id. at 1377.  The causal link element is generally construed broadly so that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."  Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998).  Thus, a "close temporal proximity" between the plaintiff's protected conduct and an adverse employment action generally is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case. See id.  On the other hand, the Eleventh Circuit has indicated that a substantial delay between the protected activity and the adverse employment action and the absence

of other evidence tending to show causation may justify judgment as a matter of law for the employer. See Wascura v. City of South Miami, 257 F.3d 1238, 1248 (11th Cir. 2001); see also Maniccia v. Brown, 171 F.3d 1364, 1370 (11th Cir. 1999). Moreover, the Supreme Court has warned that "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citations omitted).

Once the plaintiff has made a prima facie case of retaliation, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment decision. See St. Mary's Honor Cntr v. Hicks, 509 U.S. 502, 507 (1993). Because the plaintiff bears the burden of proving pretext, once defendant has articulated a legitimate, non-discriminatory reason for the termination, plaintiff must present significantly probative evidence proving pretext to avoid summary judgment. See Celotex, 477 U.S. at 317. The plaintiff must establish evidence from which a reasonable trier of fact would disbelieve rather than disagree with defendant's articulated legitimate, non-discriminatory reason for the adverse employment action. See Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997).

On September 10, 2004, Kinsey filed a charge of discrimination with the EEOC. (See Doc. #11.) Thereafter, she alleges that she was retaliated against when

43

she was not selected for the Pell City and Anniston positions.  (See Doc. #33 at 34; see also Doc. #21, Exh. A at 5, Doc. #34, Exh. 8 at ¶¶ 10-11 and Doc. #35 at 11-12.) Such alleged acts of retaliation could have been materially adverse to a reasonable employee.  See Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2409 (2006).  However, plaintiff must still demonstrate a sufficient nexus between her protected activity and the adverse actions she allegedly suffered.

Here, the complained of acts occurred on or about February 1, 2005 and April 3, 2005, approximately five and eight months, respectively, after the charge of discrimination was filed.  (See Doc. #21, Exh. A at 5.)  Thus, the temporal proximity between the events is not "very close." Breeden, 532 U.S. at 273-74 (relying on cases that held a 3 month period and a 4 month period were insufficient to support causation to hold that the 20 month period before the court was also insufficient); see also DeLong v. Best Buy Co., Inc., 2006 WL 3623697, No. 06-11853 at * 2 (11th Cir. Dec. 13, 2006) (holding that eight months between the protected activity and the adverse action is not "very close" and noting "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'") and Keith v. MGA, Inc., 2006 WL 3228073, No. 06-12803 at *3 (11th Cir. Nov. 8, 2006) (noting that

44

plaintiff was fired four months after engaging in protected activity and that, in the absence of other evidence tending to show causation, the four month gap was not "very close").

Moreover, even assuming, *arguendo*, that Kinsey has established a prima facie case of retaliation with regard to these two positions, her claim still fails because she has not shown Enterprise's articulated legitimate, non-discriminatory reasons to be pretextual.[21]  Again, "a reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). While Kinsey alleges that no reasonable person, in the exercise of impartial judgment, could have chosen Fitzgerald or Burks over herself, the evidence, as discussed in depth earlier, belies Kinsey's arguments.[22]

Thus, defendant's motion for summary judgment as it relates to plaintiff's retaliation claims is due to be granted.

---

[21] See Sections IV.B.3 and IV.B.4, supra for discussion on Enterprise's articulated legitimate, non-discriminatory reasons for selecting another candidate over Kinsey for the two positions at issue here.

[22] See Sections IV.B.3 and IV.B.4, supra, for discussion on the qualifications of Fitzgerald and Burks for the selected positions.

**V.      Conclusion**

For the reasons asserted above, there being no dispute as to any material fact,

Defendant Enterprise Leasing Company South-Central, Inc.'s Second Motion (doc.

#29) for Summary Judgment is due to be granted.

A separate order will be entered dismissing all remaining claims.

**DONE** this the ___18th___ day of May, 2007.


_____

SENIOR UNITED STATES DISTRICT JUDGE